# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEMAN DATA SYSTEMS, LLC, FLORIDA SOFTWARE SYSTEMS CORPORATION, and FLORIDA SOFTWARE SYSTEMS, INC., | Misc. Action No. 4:13-00520<br><br>(Judge Matthew W. Brann) |
| Plaintiff, | |
| v. | Civil Action No. 8:12-2580-T-24EAJ<br>Pending in the United States District<br>Court for the Middle District of |
| MARC S. SCHESSEL and PRIMROSE SOLUTIONS, LLC, | Florida, Tampa Division |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO NON-PARTY GEISINGER SYSTEMS SERVICES'S MOTION FOR PROTECTIVE ORDER**

Plaintiffs, Deman Data Systems, LLC ("DDS"), Florida Software Systems Corporation, and Florida Software Systems, Inc., pursuant to M.D. Pa. L.R. 7.6 and 7.8, respond in opposition to non-party Geisinger Systems Services's Motion for a Protective Order (Doc. 1) as to Plaintiffs' subpoena *duces tecum*. Plaintiffs request that the Court deny the motion, adopt Plaintiffs' proposed confidentiality order, <u>Exhibit A</u>, and direct Geisinger Systems Services ("Geisinger") to produce the documents requested in the subpoena. Plaintiffs are not pursuing Geisinger's trade secrets developed independent of its relationship with Defendants, but instead

seek information evidencing Defendants' misappropriation of Plaintiffs' trade secrets and use of them to lure clients away from Plaintiffs.

## **Counter History of the Case**

Plaintiffs claim that Defendants/Counter-Plaintiffs, Marc S. Schessel ("Schessel") and Primrose Solutions, LLC ("Primrose"), misappropriated and stole Plaintiffs' trade secrets, both before and after Schessel's employment with DDS, and used them to start a competing business within weeks of the termination of Schessel's employment with DDS. (Doc. 75 Counts I and IV). The trade secrets include software, developed over more than a decade, that processes information obtained from healthcare providers into enriched data. Plaintiffs' product assists providers in achieving significant cost savings in purchasing medical supplies and services. Both the software and the processed data are trade secrets. Plaintiffs allege that Schessel and Primrose misappropriated these and other trade secrets to lure existing and potential customers away from DDS.

In addition to claiming that Defendants misappropriated Plaintiffs' trade secrets, Plaintiffs also claim the following:

(i) Schessel violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by accessing Plaintiffs' computer systems without authorization and deleting data (Count II);

(ii) Schessel and Primrose conspired to and did tortiously interfere with DDS's contractual and business relationships with its customers (Counts V and VI);

(iii) Schessel breached a fiduciary duty to DDS as one of its executive officers (Count VII);

(iv) Schessel fraudulently misrepresented his character and professional background to DDS before it hired him (Count VIII);

(v) Schessel breached an agreement to assign certain "Inventions" to DDS (Count IX); and

(vi) Schessel failed to repay certain promissory notes he executed in favor of DDS (Count X).

Finally, Plaintiffs seek injunctive relief to preclude Schessel from soliciting DDS's employees and from using and disclosing DDS's confidential and other information (Count III).

Geisinger is one of DDS's customers that began doing business with Defendants while Schessel was employed with DDS or immediately after the termination of Schessel's employment. On May 8, 2013, Plaintiffs issued a subpoena to Geisinger requesting its production of documents in Danville, Pennsylvania on May 28, 2013. Exhibit B. On May 10, 2013, Plaintiffs also issued subpoenas to Geisinger employees Joel Meckley and Clifton Orzolek

requesting their appearances to provide testimony in Danville, Pennsylvania on June 20, 2013.  Exhibit C; Exhibit D.

Following telephone conferences between counsel for Plaintiffs and Geisinger, Plaintiffs and Geisinger agreed to postpone the document production and depositions until October 25, 2013, while they tried to reach an agreement as to confidential information.  On information and belief, Geisinger has assembled its document production.  Geisinger has also agreed to produce the documents once a confidentiality order or agreement is in place.  To date, however, Plaintiffs and Geisinger have been unable to reach an accord as to the terms of a confidentiality agreement.

Non-party production is particularly important in this case given Defendants' refusal to undertake a meaningful document production and concealment of highly relevant information during depositions.  Under the veil of confidentiality, Defendants' document production consists of twenty-seven pages of blank DDS documents.  Defendants have not produced a single communication with their customers.  Such communications could be critical to Plaintiffs' claims for misappropriation of trade secrets and tortious interference with business relationships.  Based on the progress of discovery to date, non-parties may be the only sources of such information.

Plaintiffs are thus in the unenviable position of needing to obtain information from non-parties potentially receiving substantial discounts on Plaintiffs' products and services due to Defendants' misappropriation of Plaintiffs' trade secrets.

## Counter Statement of Facts and Questions Involved

The issues before the Court are (1) whether Geisinger should be permitted to unilaterally designate material as "attorneys eyes only" and (2) whether Plaintiffs' ability to file Geisinger's confidential material or use it in a court proceeding should be conditioned on Plaintiffs obtaining leave to file or publicize the information under seal.

**I. Geisinger should not be permitted to unilaterally designate information as "attorneys eyes only."**

"Courts utilize a three pronged analysis to determine whether to compel disclosure of trade secret information." *Procter & Gamble Co. v. Be Well Marketing, Inc.*, Misc. Case No. 12–MC–392, 2013 WL 152801, at *2 (M.D. Pa. Jan. 15, 2013) (citation omitted). The analysis proceeds as follows:

> The party resisting discovery must first establish that the information is a trade secret and that its disclosure would be harmful. The burden then shifts to the requesting party to demonstrate the information's relevance and necessity. If the information is relevant and necessary, the court must balance the requesting party's need for disclosure against the resisting party's potential for injury. Typically, courts will balance the parties' interests by

> entering a protective order limiting disclosure of trade secrets to counsel or the parties.

*Id.* (citations omitted). In determining whether to restrict information to attorney review, "the court examines whether a party will be harmed from disclosure by analyzing the injury that may result under an appropriate protective order." *Id.* at *2.

An "attorneys eyes only" provision engenders disfavor because it "is a drastic remedy given its impact on the party entitled to the information." *Ragland v. Blue Cross Blue Shield of N.D.*, No. 1:12–cv–080, 2013 WL 3776495, at *2 (D. N.D. June 25, 2013). "For one thing, it limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decision." *Id.* (citation omitted). "Also, in many cases, it limits the ability of a party to provide needed assistance to counsel." *Id.* (citations omitted). "[A]ny designation of material as 'attorneys' eyes only' should be reserved for only those rare instances in which it is truly justified, *i.e.*, when there is a real expectation and entitlement to confidentiality under the law that has been preserved and not waived and there is no other effective alternative." *Id.*

Here, Plaintiffs are not pursuing Geisinger's trade secrets developed independent of its relationship with Defendants. Rather, Plaintiffs seek information evidencing Defendants' misappropriation of Plaintiffs' trade secrets and their use to lure clients away from Plaintiffs. Such information includes,

6

among other things, documents related to (i) Defendants' products and services, (ii) Defendants' efforts to lure Geisinger into doing business with Defendants, and (iii) any agreement between Geisinger and Defendants related to Defendants' products and services.

Although Plaintiffs' counsel initially considered agreeing to an "attorneys eyes only provision," Plaintiffs are unwilling to do so based on their understanding that Geisinger has marked many or all of its communications with Defendants as "attorneys eyes only." Geisinger's communications with Defendants regarding their products and services are not trade secrets merely because Geisinger or Defendants deem them so. The same is true for communications reflecting Defendants' attempts to develop a business relationship with Geisinger.

For example, Geisinger has not yet produced an email that its employee, Clifton Orzolek, sent to Schessel and another Geisinger employee, Joel Meckley, a few months months after the termination of Schessel's employment with DDS. Exhibit E. In the email, Mr. Orzolek states "*I understand the software is not changing* that has been used for the bench mark analysis we have been using. With that I believe we just need to confirm the security mechanisms in place for the data and the data center." *Id.* (emphasis added). Mr. Orzolek then proceeds to ask about Primrose's security measures for its products and services. *Id.* Plaintiffs do not know whether Geisinger intends to mark this email as "attorneys eyes

only," but it should not be permitted to do so. The email reveals no Geisinger trade secret, but instead merely confirms that the software Defendants intended to provide Geisinger was unchanged from what was provided in the past.[1]

In fact, Geisinger should not be marking any emails or other communications as "attorneys eyes only" given that such communications are not among the two categories of information that it claims are trade secrets subject to "attorneys eyes only" protection. First, Geisinger claims that an "attorneys eyes only" designation is appropriate as to the "terms and pricing" in its license agreements with Defendants. (Doc. 1-1 at 9). Notably, Plaintiffs are not asking Geisinger to reveal what it paid to a broad range of vendors; they are merely requesting disclosure of the price that Geisinger paid to a single vendor, Primrose, for its products and services. Geisinger's confidentiality concerns as to the price Primrose charges for its products and services are outweighed by Plaintiffs' need for the information. Plaintiffs must be able to review the pricing information to assess whether Primrose's pricing is consistent with its development of products and services independent of the misappropriation of Plaintiffs' trade secrets. The development of Plaintiffs' products and services has taken more than ten years and was conducted at great expense financially. The degree to which Primrose is

---

[1] Although the email is addressed to Schessel, he would not identify the referenced software during his deposition, stating "I'm not sure what he meant by that. You would have to ask him." <u>Exhibit F</u> at Tr. 272:14 – 272:21. When asked again, Schessel responded "I don't know what [Mr. Orzolek] is talking about." Id. at Tr. 273:15 – 273:18.

undercutting Plaintiffs' prices is highly relevant to whether Defendants have avoided research and development costs by misappropriating Plaintiffs trade secrets. The pricing information is also clearly relevant to Plaintiffs' damages resulting from Defendants' misappropriation of Plaintiffs trade secrets and tortious interference with Plaintiffs' business relationship with Geisinger.

As for the "terms" of Geisinger's license agreements with Defendants, Geisinger makes no effort to identify the terms at issue or explain why any particular terms, aside from pricing, are trade secrets. Certainly, any descriptions of Primrose's products and services within the license agreements are not Geisinger trade secrets. Geisinger's bare assertion that the unspecified terms of the license agreements are trade secrets is insufficient to satisfy its burden of proving that the terms are trade secrets subject to "attorneys eyes only" protection.

The second category of information that Geisinger claims is a trade secret is a "sample spend analytics report" that reveals the identities of Geisinger's vendors, purchase quantities, and prices that Geisinger paid. (Doc. 1-1 at 9-10). Plaintiffs do not challenge Geisinger's position as to this information. Indeed, Plaintiffs do not seek this information. However, Plaintiffs do require information related to (i) the categories and format of data that Geisinger provides to Defendants, (ii) what Defendants do with that data, and (iii) the categories and format of data that Defendants return to Geisinger. Plaintiffs consent to Geisinger redacting or

9

removing from its "sample spend analytics report" the identities of any vendors, purchase quantities, and prices that Geisinger paid. Therefore, no "attorneys eyes only" designation is needed for this information.

Because Geisinger has failed to meet its burden of demonstrating that any information at issue is a trade secret requiring "attorneys eyes only" protection, the Court should decline to delegate to Geisinger the ability to unilaterally designate its production as "attorneys eyes only." Plaintiffs are not pursuing Geisinger's trade secrets developed independent of its relationship with Defendants, but instead seek information evidencing Defendants' misappropriation of Plaintiffs' trade secrets and use to lure clients away from Plaintiffs. If, however, the Court should determine that attorney-only review is warranted, it should restrict Geisinger to designating only the specific categories of information identified in its motion, namely, the price it paid to Primrose for its products and services and, within the "sample spend analytics report," any vendor identities, purchase quantities, and prices that Geisinger paid.

**II.    Plaintiffs' ability to file Geisinger's confidential information, or use it in a court proceeding, should not be conditioned on Plaintiffs obtaining leave to file or publicize the information under seal.**

Under Geisinger's proposed order, Plaintiffs cannot file Geisinger's confidential information or use it in a court proceeding unless *Plaintiffs* demonstrate that sealing is warranted. Leave to file under seal is not granted as a

matter of course in the Middle District of Florida. *See, e.g.*, *F.T.C. v. Alcoholism Cure Corp.*, No. 3:10–cv–266–J–34TEM, 2010 WL 4840046, at *4 (M.D. Fla. Nov. 23, 2010) (denying leave to file alleged trade secrets under seal); *Bovie Med. Corp. v. Livneh*, No. 8:10–cv–1527–T–24EAJ, 2010 WL 4117635, at *2 (M.D. Fla. Oct. 19, 2010) (denying leave to file information under seal); M.D. Fla. L.R. 1.09(a).

If Plaintiffs fail to secure leave to file or publicize Geisinger's confidential information under seal, then Plaintiffs sole resort under Geisinger's proposed order would be to seek judicial review as to whether the information is in fact confidential. If the Court determines that the information is confidential, which it very well may be, Plaintiffs would be unable to use it to prove their claims or defenses. Geisinger's proposed order affords Plaintiffs no remedy should they need to file or publicize Geisinger's confidential information unsealed. This would work an undue hardship on Plaintiffs and defeat the very purpose of seeking the information from Geisinger in the first place.

Plaintiffs' proposed order offers a more reasoned approach that appropriately places the burden of demonstrating confidentiality on the party asserting it. It requires Plaintiffs, before filing confidential information or using it in a court proceeding, to provide Geisinger twenty-one days notice so it may seek a

protective order or an order requiring the filing of the information under seal. Specifically, Plaintiffs' proposed order states as follows:

> At least twenty-one days before filing Confidential Information with the court or using Confidential Information in a pre-trial proceeding or trial, Plaintiffs shall provide written notice of their intent to file or use the information to Geisinger. Geisinger may use this period to move for a protective order or for an order requiring that the information be filed under seal.

Exhibit A ¶ 7. This provision affords Geisinger a reasonable method to restrict the publication of confidential information in a court filing or during a court proceeding. It also properly places the burden of establishing the need to file information under seal on the party asserting confidentiality. Finally, it does not absolutely preclude Plaintiffs from relying on confidential information should leave to file or publicize the information under seal not be granted.

Geisinger should not be permitted to condition the filing of its information, or its use in a court proceeding, on Plaintiffs obtaining leave of Court to file or publicize the information under seal. Geisinger, not Plaintiffs, bears the burden of demonstrating that its information qualifies for sealing. Further, if Plaintiffs were unable to obtain leave to file Geisinger's information under seal, Plaintiffs could then be precluded from using highly relevant information to prove their claims and defenses. As Plaintiffs' proposed confidentiality order avoids these problems and provides Geisinger an adequate mechanism to assert its confidentiality concerns,

the Court should adopt Plaintiffs' proposed confidentiality order and decline to condition the filing of Geisinger's confidential information, or its publication during a court proceeding, on Plaintiffs obtaining leave to file or publicize the information under seal.

WHEREFORE, Plaintiffs request that the Court deny Geisinger's motion and adopt Plaintiffs' proposed confidentiality order.

Respectfully submitted,

Dated: November 8, 2013

/s/ Gregory W. Kehoe
Gregory W. Kehoe (*pro hac vice*)
Ryan D. Maxey (*pro hac vice*)
GREENBERG TRAURIG, P.A.
625 East Twiggs Street Suite 100
Tampa, FL 33602
Tel: (813) 318-5700
Fax: (813) 318-5900
kehoeg@gtlaw.com
maxeyr@gtlaw.com

Charles L. Rombeau (PA 204859)
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 988-7820
Fax: (215) 717-5238
rombeauc@gtlaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Charles L. Rombeau