IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMAN DATA SYSTEMS, LLC, FLORIDA SOFTWARE SYSTEMS CORPORATION, & FLORIDA SOFTWARE SYSTEMS, INC., | : : : : : | No. 4:13-mc-00520 (Judge Brann) |
| Plaintiffs, | : : : | |
| v. | : : | |
| MARC R. SCHESSEL & PRIMROSE SOLUTIONS LLC | : : : | |
| Defendants. | : | |

## **MEMORANDUM**
January 16, 2014

Presently before the Court is Geisinger System Services' ("Movant" or "GSS") Motion for a Protective Order (ECF No. 1) concerning requests for information by the Plaintiffs in the above-captioned lawsuit, Deman Data Systems, LLC, Florida Software Systems, Corp., and Florida Software Systems, Inc. ("Plaintiffs"). GSS is not a party in that lawsuit. For the reasons discussed, the Movant's Motion for a Protective Order is granted.

**I.    BACKGROUND**

The Plaintiffs, Deman Data Systems, LLC, Florida Software Systems, Corp., and Florida Software Systems, Inc., are presently involved in litigation against the

1

Defendants, Marc R. Schessel and Primrose Solutions, LLC ("Defendants"), in the United States District Court for the Middle District of Florida.  See Movant's Mot. Protective Order Ex. A, Oct. 25, 2013, ECF No. 1-2 [hereinafter GSS Mot.]. Geisinger System Services is a non-party to the lawsuit and one of Plaintiffs' customers with a license to use Plaintiffs' software.  GSS is affiliated with the Geisinger Health System ("Geisinger") and supports its supply chain and materials management operations.  GSS Mot., at 1.

Defendant Marc Schessel is a former employee of Plaintiffs.  In the underlying lawsuit, the Plaintiffs allege Schessel and Primrose Solutions LLC ("Primrose"), his new company, committed various business torts, including misappropriating and stealing Plaintiffs' trade secrets and software that processes information obtained from healthcare providers into enriched data.  GSS Mot., Ex. A; Pls.' Br. Opp'n Movant's Mot. Protective Order 2, Nov. 8, 2013, ECF No. 9 [hereinafter Pls.' Br.].  GSS's only relation to these allegations concern its business relationship as a customer of the parties.

As part of discovery in the lawsuit, Plaintiffs served a subpoena on GSS seeking a broad range of its business documents.  See GSS Mot., Exs. B, C, D. GSS responded by objecting to the subpoena, explaining that the requests for production were overly broad and burdensome and that they raised issues relating

to confidential business information belonging to GSS. See GSS Mot., Ex. E. Some of the requested information is highly confidential to GSS because it concerns the pricing and terms of license agreements GSS has negotiated with various software vendors. GSS Mot., at 6. The information also includes spending data GSS has analyzed regarding Geisinger's purchases through the use of software licensed from businesses, including the Defendants. Id. GSS is concerned with the prospect of the Plaintiffs or other entities viewing these aspects of the requested information because, if the specifics were known to the Plaintiffs or others, it could undercut GSS's future license negotiations and adversely affect its business. GSS Mot., Ex J. Moreover, GSS regularly maintains this type of information confidentially and takes steps to protect it, consistently utilizing confidentiality clauses in its software licenses including in those at issue. See GSS Mot., at 9.

These objections prompted negotiations between GSS and the Plaintiffs that resulted in an agreement to address GSS's concerns. The parties agreed to narrow the scope of the subpoena to documents relating to communications between GSS and the Defendants and a representative sample report analyzing GSS's spending data using Primrose's software. GSS Mot., at 5–6, Ex. F. The Plaintiff's also agreed to provide GSS with a confidentiality agreement between the parties in the

3

lawsuit that would protect GSS's trade secrets and allow GSS to mark certain documents with the privacy designations "confidential" and "attorneys' eyes only." Id. GSS then began preparing the documents, using these confidentiality labels on particularly sensitive pricing and licensing negotiation information. Id.

The Plaintiffs and Defendants, however, were unable to agree upon a confidentiality agreement between them with respect to GSS's information, so GSS attempted to work with Plaintiffs to negotiate a stipulated protective order to achieve the same ends originally discussed. At this juncture, the Plaintiffs objected to GSS's right to utilize the "attorneys' eyes only" designation, although previously agreeing to its use. See GSS Mot., at 7–8, Exs. E, F, I; Pls.' Br., at 6–8. The Plaintiffs alleged GSS would abuse the use of that label by affixing it to less than highly confidential documents, which GSS denies. Id. The Plaintiff also seeks the ability to file GSS's confidential information publicly in the underlying litigation. Pls.' Br., at 10. The parties could not agree on these two issues and, consequently, GSS filed a Motion for a Protective Order in this Court.

## II. DISCUSSION

Federal Rule of Civil Procedure 26(c) authorizes a district court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other

confidential research, development, or commercial information not be revealed or be revealed only in a specific way." FED. R. CIV. P. 26(c)(1). Specifically regarding subpoenas, Rule 45(d)(3)(B)(i) provides that "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(d)(3)(B)(i).

When a court receives such a motion, it employs a three-pronged analysis cogently articulated by Judge Christopher C. Conner:

> [t]he party resisting discovery must first establish that the information is a trade secret and that its disclosure would be harmful. The burden then shifts to the requesting party to demonstrate the information's relevance and necessity. If the information is relevant and necessary, the court must balance the requesting party's need for disclosure against the resisting party's potential for injury.

Procter & Gamble Co. v. Be Well Marketing, Inc., 12-mc-392, 2013 WL 152801, at *2 (M.D. Pa. Jan. 15, 2013) (Conner, J.) (internal citations omitted). Judge Conner added that "[t]ypically, courts will balance the parties' interests by entering a protective order limiting disclosure of trade secrets to counsel or the parties." Id.

    A.    **The Information Contains Trade Secrets Relevant to Plaintiffs' Case**

5

Pennsylvania courts have adopted the definition of trade secret articulated in the RESTATEMENT OF TORTS, which states that a trade secret "may consist of any formula . . . or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." BIEC Int'l, Inc. v. Global Steel Servs., Ltd., 791 F. Supp. 489, 539 (E.D. Pa. 1992) (quoting RESTATEMENT OF TORTS § 757 cmt. b (1930)). Courts have applied this protection to a broad spectrum of confidential business information including "costing and pricing information . . . and the terms of specific customer accounts." Id. at 546; see also Council for Educ. Travel, USA v. Czopek, 1:11-CV-00672, 2011 WL 3882474, at *4 (M.D. Pa. Sept. 2, 2011) (Rambo, J.) (stating trade secret protection can include information regarding client accounts and compensation terms); Youtie v. Macy's Retail Holding, Inc., 653 F. Supp. 2d 612, 621 (E.D. Pa. 2009) (noting that trade secrets include costing and pricing information and the terms of specific accounts); Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 1995 WL 455969, at *8 (E.D. Pa. July 27, 1995) (recognizing that trade secrets include costing and pricing plans and terms of accounts).

Factors relevant to determining whether information is a trade secret include: i) the extent to which the information is known outside of the owner's business; ii)

the extent to which it is known by employees and others involved in the owner's business; iii) the extent of the measures taken by the owner to guard the secrecy of the information; iv) the value of the information to the owner and competitors; v) the amount of effort or money expended by the owner in developing the information; vi) ease or difficulty with which the information could be properly acquired or duplicated by others.  Nova Chems., Inc. v. Sekisui Plastics Co., Ltd., 579 F.3d 319, 327 (3d Cir. 2009); SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1256 (3d Cir. 1985).

The weight of these factors militates in favor of GSS, because it demonstrates facts for each element that the Plaintiff fails to rebut.  GSS evidently protects the information it considers highly secret and valuable from outside parties, because its revelation would be detrimental to GSS's business and result in increased costs.  Consequently, some information now at issue qualifies as trade secrets and is entitled to protection as such.  See, e.g., Procter & Gamble Co., 2013 WL 152801, at *2.

Nevertheless, some of the information contained in the requested documents is relevant and necessary to the Plaintiffs in making their case.  In the underlying lawsuit pending in the Middle District of Florida, the Plaintiffs allege the Defendant committed various business torts and other illicit acts that undercut

the Plaintiffs' prices and lured clients from Plaintiff. See GSS Mot., Ex. A. The Plaintiffs' further allege that the Defendant interfered with the Plaintiffs' relationship with GSS, and the requested information is highly relevant to exploring the tortious nature of the Defendant's acts with respect to GSS. Pls.' Br., at 8–9. Therefore, the information is relevant to the Plaintiffs' case. The task before the Court, then, is to balance appropriately the Plaintiffs' interest in this relevant information with GSS's interest in protecting its trade secrets. See Proctor & Gamble, 2013 WL 152801, at *2.

## B. Balancing Competing Interests

The flashpoint of this dispute concerns the appropriate balance between the Plaintiff's need for the information and GSS's potential for injury. See Proctor & Gamble, 2013 WL 152801 at *2. To do so, courts typically utilize a protective order. See Mycogen Plant Sci., Inc. v. Monsanto Co., 164 F.R.D. 623, 626 n. 7 (E.D. Pa. 1996). In this case, however, the parties dispute two central aspects of a proposed protective order: i) the scope and appropriate use of the marker "attorneys' eyes only" to protect GSS's information; and, ii) the Plaintiffs' ability to file designated confidential information publicly in the underlying litigation. Pls.' Br., at 5. The Court addresses these concerns seriatim.

District courts enjoy flexibility to construct protective orders that allow

discovery with conditions that protect the disclosing party's interest in secrecy. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994). Protective orders that allow for "attorneys' eyes only" designations have been utilized often in circumstances where the requesting party could use the information to the disadvantage of the disclosing party. See, e.g., Frank Brunckhorst Co. v. IMH, 12-0217 2012 WL 5250399, at *9 (E.D. Pa. Oct. 23, 2012) (granting use of protective order with "attorneys' eyes only" designation to restrict sensitive information from third-parties); C.A. Muer Corp. v. Big River Fish Co., 1998 WL 488007, at *3–4 (approving a protective order limiting disclosures to attorneys and experts where dissemination of confidential information could have lead to a competitive disadvantage in business). The Plaintiffs' reliance on a single opinion by a magistrate judge in the United States District Court for the District of North Dakota that an "attorneys eyes only" provision is disfavored as a "drastic remedy" is unpersuasive in the face of both the wide use of those provisions in this jurisdiction and the broad discretion of district courts in this matter. Compare Ragland v. Blue Cross Blue Shield of N.D., No. 1:12-cv-080, 2013 WL 3776495, at *2 (D.N.D. June 25, 2013), with Farley v. Cessna Aircraft Co., 93-CV-6948, 1994 WL 396479, at *2 (E.D. Pa. July 22, 1994).

This Court finds an "attorneys' eyes only" provision is appropriate for use in

this instance, because some of the requested information is highly confidential and amenable to that designation. Plaintiffs and Defendants compete for GSS's business, and GSS contends that neither should be permitted to have access to negotiated terms GSS has secured from the other. Pls.' Br., at 14. Consequently, the "attorneys' eyes only" designation is necessary in those instances. The remaining questions, then, concern the manner in which this designation shall be applied, how the Plaintiff can challenge this designation, and the procedure by which the Plaintiff can file information with the court in their litigation.

The structure of the protective order proposed by GSS is more effective at balancing the parties' respective interests than is the order proposed by the Plaintiff. GSS's proposed order contains three important qualities the allow GSS's information to remain sufficiently protected, but also permit the Plaintiff to challenge GSS's use or alleged overuse of secrecy designations.

First, the protective order allows GSS to mark certain information for confidential protection and supplies two standards for identifying the alleged trade secrets. See GSS Mot., Ex. A, Proposed Protective Order ¶¶ 1, 3 [hereinafter Protective Order]. These two levels of designation are: a) "confidential," which is defined as information that must be kept only from third-parties but is accessible to the Plaintiffs, and b) the "attorneys' eyes only" designation, which indicates more

sensitive business information that must be kept from the Plaintiffs' and Defendants' employees. Protective Order, ¶ 3. This tiered structure allows GSS to invoke the "attorneys' eyes only" provision as deemed necessary, but to use the less restrictive provision in all other instances. GSS proposes to utilize the "attorneys' eyes only" designation only on the most highly confidential information, including trade secrets and the specifics of its licensing costs and pricing information, and the protective order shall limit its use accordingly.

Second, the proposed order allows the Plaintiffs to challenge GSS's good faith use of a confidentiality designation if the Plaintiffs believe it was inappropriately applied. Proposed Order, ¶ 13. The provision states that the challenging party and GSS must first attempt to resolve the dispute in good faith. If unsuccessful, the parties may file a motion with the United States District Court for the Middle District of Pennsylvania requesting a determination as to the appropriate confidentiality designation for the information at issue. Id. The Middle District of Pennsylvania is appropriate for this challenge, because GSS is a non-party to the lawsuit and should not bear the expense of litigating over this challenge in a distant forum with which it has little to no connection. See, e.g., Frank Brunckhorst Co., 2012 WL 5250399, at *5. GSS does, however, retain the burden of proving that the challenged confidentiality designation is appropriate.

11

Third, GSS's proposed procedure for filing information with the court in the Middle District of Florida, more appropriately balances the parties' interests than does the Plaintiffs' proposal.  The order allows the Plaintiffs to use GSS's documents, but requires them to seek leave to file those documents under seal in any public filing.  Id. at ¶¶ 5–7.  This Court is aware that leave to file documents under seal is not granted as a matter of course in the Middle District of Florida.  See, e.g., F.T.C. v. Alcoholism Cure Corp., 3:10-cv-266-J-34TEM, 2010 WL 4840046, at *4 (M.D. Fla. Nov. 23, 2010); Bovie Med. Corp. v. Livneh, 8:10-cv-1527-T-24EAJ, 2010 WL 4117635, at *2 (M.D. Fla. Oct. 19, 2010).  Nevertheless, failing to file confidential information under seal would effectively nullify the contents of a protective order.  If the Plaintiffs fail to obtain leave to file under seal in the Middle District of Florida, the Plaintiff can then challenge GSS's designation of confidentiality in this Court, with the burden on GSS to establish the information is in fact confidential.

The Plaintiffs counter-proposal would allow them to file GSS's information at will in the Middle District of Florida, providing GSS with a twenty-one (21) day notice period in which to contest that filing.  Pls.' Br., Ex A, Proposed Order, ¶ 7.  GSS would then be required to move in the Middle District of Florida for another protective order or for an order requiring that the information be filed under seal.

Moreover, GSS would need to do this each and every time the Plaintiffs sought to file a document GSS deemed sensitive. Imposing such costs on GSS, a non-party to the lawsuit, to protect its confidential information in a distant judicial district in which it has little to no demonstrated connection is unwarranted when "discovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents." Frank Brunckhorst Co., 2012 WL 5250399, at *5 (internal quotations and citation omitted).

In sum, GSS is required to utilize the confidentiality designations in good faith and only where applicable, as articulated in the accompanying Protective Order. GSS has given the Court no reason to believe it will not strictly comply with the good faith designation requirement and limit its confidential designations to only information that warrants it. If the Plaintiffs dispute the propriety of GSS's application of the designations, they may file a challenge to the designation with this Court after first seeking to resolve the dispute with GSS.

Furthermore, if the Plaintiffs are denied leave to file under seal in the Middle District of Florida, they again retain the opportunity to challenge the propriety of GSS's designation of material. At all times during any challenge, the burden remains with GSS to demonstrate why its use of the designation was appropriate in this particular instance. This is an appropriate balance between the Plaintiffs's

requests for information in litigating their suit and GSS's position as an independent third-party with no interest in the suit other than to protect its trade secrets with minimal expense and inconvenience.

### III. CONCLUSION

The Movant's Motion for a Protective Order is granted. A Protective Order drafted in accordance with the principles herein discussed shall follow.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge